NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

| | | |
|---|---|---|
| JAMIE CENTENO, | : | Civ. Action No. 16-2779 (RMB) |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BRUCE DAVIS, ADMINISTRATOR | : | |
| and ATTORNEY GENERAL | : | |
| OF THE STATE OF NEW JERSEY, | : | |
| | : | |
| Respondents | : | |

---

BUMB, United States District Judge

This matter comes before the Court upon Petitioner Jamie Centeno's ("Petitioner")

Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2010 state

court conviction for murder, endangering an injured victim and weapons charges. (Am.

Pet., Dkt. No. 4.) Respondents filed an answer opposing habeas relief (Answer, Dkt. No.

13), and Petitioner filed a reply brief. (Reply Brief, Dkt. No. 21.) For the reasons set forth

below, the Court denies the petition for writ of habeas corpus.

I.      PROCEDURAL HISTORY

On June 10, 2009, a grand jury in Camden County, New Jersey returned an

indictment charging Petitioner with first-degree murder of Jose Sosa, in violation of

N.J.S.A. 2C:11-3a(1)(2) (Count One); second-degree possession of a weapon for an

unlawful purpose, in violation of N.J.S.A. 2C:39-4a (Count Two); second-degree unlawful

possession of a weapon, in violation of N.J.S.A. 2C:39-5b (Count Three); third-degree

endangering an injured victim, in violation of N.J.S.A. 2C:12-1.2 (Count Four); and second-degree certain persons not to have weapons, in violation of N.J.S.A. 2C:39-7b (Count Five). (Answer, Ex. Ra1, Dkt. No. 13-4.)[1] After trial, the jury found Petitioner guilty of all counts. (Rta5 at 123-24, 139-40; Dkt. No. 13-57; Ra2, Dkt. No. 13-5; Ra3, Dkt No. 13-6.) On March 23, 2010, Petitioner was sentenced on Counts 1 and 2 to life imprisonment, with 63 ¾ years parole ineligibility; on Count 3, a five-year term of imprisonment concurrent to Count 1 and consecutive to Count 4 and 5; on Count 4, a four-year term of imprisonment consecutive to Counts 1 and 5; and on Count 5, a 7-year term of imprisonment consecutive to Counts 1 and 4, with 5 years parole ineligibility. (Ra4, Dkt. No. 13-7 at 5-6.)

Petitioner timely filed a notice of appeal with the New Jersey Superior Court, Appellate Division. (Ra5, Dkt. No. 13-8.) On May 2, 2012, the Appellate Division affirmed Petitioner's convictions and sentence. (Ra9, Dkt. No. 13-12.) Petitioner filed a notice of petition for certification in the New Jersey Supreme Court, which was denied. (Ra10, Ra11, Ra13, Ra14, Dkt. Nos. 13-13, 13-14, 13-16 and 13-17.) On February 13, 2013, Petitioner filed his first petition for post-conviction relief ("PCR"). (Ra15, Dkt. No. 13-18.) The Honorable Gwendolyn Blue, J.S.C. denied Petitioner's PCR petition without an evidentiary hearing. (Ra19, Dkt. No. 13-22). The Appellate Division granted Petitioner's motion to file his notice of appeal as within time (Ra22, Dkt. No. 13-25), and on October 1, 2015, the Appellate Division affirmed the denial of Petitioner's first PCR petition. (Ra25, Dkt. No. 13-28.) The New Jersey Supreme Court denied Petitioner's petition for certification. (Ra29, Dkt. No. 13-32.) On May 17, 2016, Petitioner filed his petition for writ of habeas corpus

---

[1] The state court records are attached to Respondents' answer and are cited herein by the state court exhibit number followed by this Court's docket entry number, with page citations to the page numbers assigned by CM/ECF.

under 28 U.S.C. § 2254 in this Court, and sought a stay and abeyance because Grounds Three and Four of the petition were unexhausted. (Pet., Dkt. No. 1.) On June 1, 2016, this Court granted Petitioner's request for a stay and held the petition in abeyance while he exhausted Grounds Three and Four of his habeas petition in the state courts. (Order, Dkt. No. 2.)

On April 27, 2017, Judge Blue denied Petitioner's second PCR petition. (Ra34, Dkt. No. 13-34.) On September 13, 2018, the Appellate Division affirmed the denial of Petitioner's second PCR petition, and subsequently denied Petitioner's motion for reconsideration. (Ra42, Ra44, Dkt. Nos. 13-45, 13-47.) On April 4, 2019, the New Jersey Supreme Court denied Petitioner's petition for certification. (Ra49, Dkt. No. 13-52.) On April 30, 2019, Petitioner submitted his amended habeas petition, which Respondents now oppose. (Am. Pet., Dkt. 4; Answer, Dkt. No. 13; Reply Brief, Dkt. No. 21.)

II.   DISCUSSION

A.   <u>Standard of Review</u>

Prior to bringing a federal habeas petition under 28 U.S.C. § 2254(b)(1)(A), a state prisoner must exhaust his state remedies. Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2). If a state prisoner's constitutional claim has been barred in the state courts on procedural grounds, a procedural default occurs and a habeas court cannot review the claim absent a showing of cause and prejudice or actual innocence. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 750 (1991).

If a constitutional claim has been exhausted,

> [a]n application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court

> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the Supreme
>> Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

When a state court summarily rejects all or some federal claims without

discussion, habeas courts must presume the claim(s) was adjudicated on the merits.

Bennett v. Superintendent Graterford SCI, 886 F.3d 268, 282 (3d Cir. 2018) (citing

Johnson v. Williams, 568 U.S. 289, 302 (2013)). The presumption is rebuttable. Bennett,

886 F.3d at 281-83. The Supreme Court provided the following guidance.

> [H]ow [is] a federal habeas court to find the state court's
> reasons when the relevant state-court decision on the merits,
> say, a state supreme court decision, does not come
> accompanied with those reasons. For instance, the decision
> may consist of a one-word order, such as "affirmed" or
> "denied." What then is the federal habeas court to do? We hold
> that the federal court should "look through" the unexplained
> decision to the last related state-court decision that does provide
> a relevant rationale. It should then presume that the
> unexplained decision adopted the same reasoning. But the State
> may rebut the presumption by showing that the unexplained
> affirmance relied or most likely did rely on different grounds
> than the lower state court's decision, such as alternative
> grounds for affirmance that were briefed or argued to the state
> supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). "When the evidence leads very clearly to

the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d)

entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." Johnson, 568 U.S. at 303.

The Third Circuit directed habeas courts to follow a two-step analysis under § 2254(d)(1). See Rosen v. Superintendent Mahanoy SCI, 972 F.3d 245, 253 (3d Cir. 2020) (citing Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir. 1999) (en banc), cert. denied 528 U.S. 824 (1999)). First, courts should "determine what the clearly established Supreme Court decisional law was at the time Petitioner's conviction became final" and "identify whether the Supreme Court has articulated a rule specific enough to trigger 'contrary to' review." Id. at 253 (quoting Fischetti v. Johnson, 384 F.3d 140, 148 (3d Cir. 2004)). "The 'clearly established Federal law' provision requires Supreme Court decisions to be viewed through a 'sharply focused lens.'" Id. Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), only if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" Williams, 529 U.S. at 405-06.

Second, if Supreme Court precedent is not specific enough to trigger contrary review, habeas courts should "evaluate whether the state court unreasonably applied the relevant body of precedent." Rosen, 972 F.3d at 253 (quoting Matteo, 171 F.3d at 888)). Under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011)

(quoting <u>Williams</u>, 529 U.S. at 410). For relief under this provision, the state court's decision "evaluated objectively" must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." <u>Rosen</u>, 972 F.3d at 252 (quoting <u>Matteo</u>, 171 F.3d at 890)). A habeas court must frame the "relevant question as whether a fairminded jurist could reach a different conclusion." <u>Shinn v. Kayer</u>, 141 S. Ct. 517, 524 (2020) or, in other words, whether "every fairminded jurist would disagree" with the state court. <u>Mays v. Hines</u>, 141 S. Ct. 1145, 1149 (2021).

A petitioner who claims that the state court's adjudication of his claim was based on an unreasonable factual determination under § 2254(d)(2), faces a similarly heavy burden of proof because "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Miller-El v. Cockerell</u>, 537 U.S. 322, 340 (2003). "The petitioner must show that the state court verdict was based on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached the same conclusion." <u>Rosen</u>, 972 F.3d at 252 (3d Cir. 2020) (citing <u>Campbell v. Vaughn</u>, 209 F.3d 280, 291 (3d Cir. 2000)).

"Although state prisoners may sometimes submit new evidence in federal court," the habeas statute, "is designed to strongly discourage them from doing so." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 186 (2011). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" <u>Id.</u> (quoting <u>Williams v. Taylor</u> ("<u>Michael Williams</u>"), 529 U.S. at 437 (additional citations omitted)). Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. <u>Pinholster</u>, 563 U.S. at 180-81.

6

The habeas statute also permits an evidentiary hearing under the following circumstances,

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e). The Supreme Court explained,

> Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief. For example, not all federal habeas claims by state prisoners fall within the scope of § 2254(d), which applies only to claims "adjudicated on the merits in State court proceedings." At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court. *See, e.g.*, *Michael Williams*, 529 U.S., at 427–429, 120 S.Ct. 1479.

Pinholster, 563 U.S. at 185–86.

B.     Appellate Division's Findings of Fact on Direct Appeal

Habeas review is deferential to a state court's determination of facts. 28 U.S.C. §

2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment
> of a State court, a determination of a factual issue made by a
> State court shall be presumed to be correct. The applicant shall
> have the burden of rebutting the presumption of correctness by
> clear and convincing evidence.

On Petitioner's direct appeal of his conviction, the Appellate Division made the following

findings of fact.

> Defendant's killing of Jose Sosa occurred around midnight on
> December 13, 2008. Sosa was then seated with a friend at the
> bar, The Waterview Inn, also known as Monte's. Earlier that
> evening, when defendant entered the bar, he asked the
> bartender, Rose Marie Nelson, if he could charge his cell
> phone. She directed hjm to another area of the bar, near the
> pool table. Defendant was wearing dark clothes, including a
> jacket or "hoodie."
>
> During the course of the evening, defendant and an
> acquaintance, Diana Ocasio, spoke briefly. Defendant
> complimented Ocasio on her appearance, and with his cell
> phone photographed the two of them standing together.
> Approximately twenty or twenty-five minutes after defendant
> and Nelson spoke regarding his cell phone, defendant walked
> back into the bar area towards the victim, which drew Nelson's
> attention, as she knew that Sosa and defendant "didn't get
> along." Even though defendant's hood was pulled over his
> head, she could see his face. Indeed, Nelson testified that she
> had a frontal view of him until he turned to Sosa; she could
> even see the scar on the left side of his face. NeIson watched as
> defendant walked up to Sosa and drew a small gun. He pointed
> the gun downward towards Sosa's left side " [a]round his
> shoulder towards his chest area[,]" and shot him. Nelson heard
> a loud popping noise as the gun was fired and saw defendant
> walk out of the bar.
>
> Nelson immediately called 911 and began to administer CPR to
> Sosa. She and other patrons eventually placed the victim in the

back of a pickup truck because they feared the ambulance might be delayed in arriving. Nelson gave a statement that night and subsequently called the Camden County Prosecutor's Office after discovering defendant's cell phone where he had left it, still plugged into the wall near the pool table in the bar.

Miguel Mota testified that he was at Monte's that evening playing pool when, some ten or fifteen minutes after arriving between 11:00 and midnight, he heard a "loud pop." He grabbed his wife and sister-in-law and pushed them into a nearby bathroom. When he turned in the direction of the bar towards the source of the noise, there were "a lot of people running." From a few feet away, Mota saw an individual, hand extended outward holding a gun, wearing a black hoodie, however, he could not see a face. The victim grabbed his side and attempted to walk towards the door but collapsed on the ground. The gunman simply walked out of the bar.

Felicia Santiago, another bar patron who had known Sosa for several years, recalled noticing when he and his companion entered the premises and sat at the short end of the bar. When Santiago went outside to smoke a cigarette in the parking lot, she encountered defendant as he arrived and hugged him, as she had known him for three or four years. She introduced him to her friend. Once back inside, Santiago observed some "eye contact" between defendant and Sosa and felt sudden tension in the air. Minutes later, defendant left. After a short while, she heard the door open [but did not see who entered the bar], [heard] the sound of a gunshot, and [saw] people running. Santiago did not see who fired the shot, but saw the victim make an abrupt movement and heard him tell her to "stay down." Sosa headed towards the door but fell backwards onto the ground.

The forensic evidence recovered from the scene corroborated that only a single shot was fired; only one projectile and one shell casing were recovered from the floor of the bar. The medical examiner, Dr. Gerald Feigin, testified that death was caused by a gunshot wound to the left side of the chest. The bullet "passed through a large artery and vein in the right lung causing massive bleeding[,]" exiting through the back. Feigin also testified that the three-by-five-inch area of stippling or gunpowder burns surrounding the entrance of the projectile indicated it was an intermediate range gunshot wound, in his opinion fired from a distance of six to eighteen inches, although in "the literature," the range of six inches to

two feet was described as consistent with similar markings. The two-inch difference in height between the entrance wound and exit wound meant that the weapon was fired at a downward ang1e.

In September 2005, Investigator Martin Farrell of the Camden County Prosecutor's Office had investigated Sosa's involvement in the assault of Edwin Centeno, defendant's brother. While the investigation was ongoing, Farrell sent several letters to Centeno's home, eventually visiting the residence. Although Centeno was not there, Farrell spoke with defendant and explained the purpose of his visit. Because Edwin Centeno died a short time later in a car accident, Farrell never did speak to him. As a result of [Defendant's brother's] death and the State's inability to locate the second victim of the assault, the indictment charging the victim, Sosa, with, among other things, attempted murder, was dismissed in January 2001.

(Ra9, Dkt. No. 13-12.)

C.     Ground One (a)

Petitioner presents two claims of ineffective assistance of trial counsel in Ground One of his amended habeas petition. For his first claim, Petitioner alleges his trial counsel was ineffective by failing to investigate alibi witnesses whom Petitioner had identified. In support of this claim, Petitioner states,

Petitioner supplied witnesses to trial counsel that would have testified that he was not at the scene of the crime when it occurred. Defense counsel presented no defense for petitioner at trial. These witnesses possessed the potential of creating doubt in the mind of the jurors. There was no downside for counsel to present these witnesses and it cannot be reasoned that failure to investigate or produce these witnesses was a reasonable trial strategy. Counsel failed to put forth a viable defense to the crime, by way of failure to produce available alibi witnesses. There was nothing preventing counsel from properly investigating the alibi witnesses supplied by petitioner, and the effort to do so would have been minimal whereas the consequence of not doing so was monumental. In [a]ddition, Petitioner supplied the PCR Court with [a]ffidavits that support his claim.

(Am. Pet., Dkt. No. 4 at 6.)  Notably, when Petitioner returned to the state courts to exhaust Grounds Three and Four of his original habeas petition, he raised additional new grounds for relief, including "Point IIC" that PCR counsel was ineffective by "failing to provide more than bare allegations to support Petitioner's argument that trial counsel failed to investigate alibi witnesses." (Ra32, Dkt. No. 13-35.) This claim is not reviewable under 28 U.S.C. § 2254 because "there is no constitutional right to an attorney in state post-conviction proceedings[;] [c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." Coleman, 501 U.S. at 752 (internal citation and citation omitted), holding modified by Martinez v. Ryan, 566 U.S. 1 (2012)).

Respondents oppose relief on this claim, asserting that the state courts' decisions were neither contrary to nor an unreasonable application of the Strickland standard for Sixth Amendment ineffective assistance of counsel claims. (Answer, Dkt. No. 13 at 53.)  In reply, Petitioner argues that his trial counsel never offered a strategic reason for not investigating potential alibi witnesses, although they could have been easily located because there were many people at the bar on the night of the shooting. (Reply Brief, Dkt. No. 19 at 24.) The state court did not grant an evidentiary hearing to permit Petitioner to determine his trial counsel's reason for not investigating potential witnesses. (Id. at 20-25.)  Petitioner urges this Court to conclude that counsel's failure to investigate was not a reasonable trial strategy, but a complete abdication of the duty to investigate. (Id. at 25.)

To establish prejudice, Petitioner relies on evidence outside the state court record, information that he obtained through his own later investigation.[2] (Id. at 26.) Habeas review

_____

[2]  Petitioner's "Table of Appendix" identifies the following exhibits: (Pa-1,) Affidavit of Rafael Medina, dated on 8/7/16; (Pa-2) Affidavit of Jaime Centeno, dated on 6/6/18; (Pa-3) Affidavit of Francisco Centeno, dated on 4/12/17; (Pa-4) Affidavit of Anthony

under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Pinholster, 563 U.S. 170, 180-81 (2011); see Moore v. Sec'y Pennsylvania Dep't of Corr., 457 F. App'x 170, 177 (3d Cir. 2012) (citing Pinholster, 131 S. Ct. at 1399-1400.) Petitioner is not entitled to an evidentiary hearing on Ground One (a) under § 2254(e)(2) because the PCR court and Appellate Division denied the claim on the merits, and the claim does not arise out of a new rule of constitutional law that was previously unavailable, nor is the claim based on a factual predicate that could not have been previously discovered through the exercise of due diligence. The Court will review Ground One (a) of the habeas petition without consideration of Point II(C) in Petitioner's second PCR petition, and without consideration of any references in Petitioner's reply brief to the second PCR proceedings.

1.    *Sixth Amendment Ineffective Assistance of Counsel Standard*

Strickland v. Washington governs ineffective assistance of counsel claims on habeas review. See Richter, 562 U.S. at 101 ("The pivotal question [on habeas review] is whether the state court's application of the *Strickland* standard was unreasonable.") There are two elements to a Sixth Amendment ineffective assistance of counsel claim, deficient performance by counsel and prejudice. Strickland v. Washington, 466 U.S. 668, 691-92 (1984). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. "If it is easier to dispose of an

---

Fontanez, dated on 7/21/19; (Pa-5) Affidavit of Jaime Centeno, dated on 6/16/19; (Pa-6) Affidavit of Jaime Centeno, dated on 10/12/19; (Pa-7) Letter from Nino V. Tinari, dated on 1/31/12; (Pa-8) Letter from Petitioner, dated on 2/4/2012; and (Pa-9) Second Letter from Nino V. Tinari, dated on 4/23/12. (Reply Brief, Dkt. No. 19 at 3.)

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Premo v. Moore</u>, 562 U.S. 115, 121 (2011).

For the deficient performance prong, "a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> (internal quotations omitted) (quoting <u>Richter</u>, 562 U.S. at 104). A petitioner must overcome a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Id.</u> (quoting <u>Richter</u>, 562 U.S. at 104) (quoting <u>Strickland</u>, 466 U.S. at 689).

The burden a petitioner must meet is "'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" <u>Premo</u>, 562 U.S. at 122 (quoting <u>Richter</u>, 562 U.S. at 104) (quoting <u>Strickland</u>, 466 U.S. at 687)). "Reliance on 'the harsh light of hindsight' … is precisely what <u>Strickland</u> and AEDPA seek to prevent." <u>Richter</u>, 562 U.S. at 107 (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 702 (2002)). Habeas review of counsel's performance is doubly deferential, and the question is not whether counsel's actions were reasonable but whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard. <u>Id.</u> at 105 (citations omitted).

a.    <u>*The highest reasoned state court decision*</u>

"[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." <u>Wilson</u>, 138 S. Ct. at 1192. The highest reasoned state court decision on Ground One(a) of the amended habeas petition is the October 1, 2015, Appellate Division opinion, affirming the

denial of Petitioner's first PCR petition. (Ra25, Dkt. No. 13-28.) The Appellate Division

held, in relevant part:

> Defendant's conviction arises from an incident on the evening
> of December 13, 2008. At approximately 8 p.m., Jose Sosa and
> a friend arrived at the Waterview Inn located in Camden. Sosa
> and his friend were regular patrons at the bar. According to
> R.N., the bartender, Sosa and his friend had a few drinks,
> played pool, and left. They returned a few hours later at
> approximately 11:00 p.m. Defendant was also at the bar that
> night, and R.N. assisted defendant in finding a place at the bar
> where defendant could charge his cellular phone.
>
> Approximately twenty minutes later, defendant walked backed
> into the bar area towards Sosa. R.N. witnessed defendant walk
> towards Sosa and shoot him in the chest. Sosa was fatally
> injured. Defendant and Sosa were known to have an
> antagonistic relationship.
> . . .
>
> Following our review, in light of the record and applicable law,
> we are not persuaded that the alleged deficiencies by trial
> counsel violated the Strickland test. We begin by addressing
> defendant's assertion that he was provided ineffective assistance
> of counsel.
>
> First, defendant contends trial counsel was ineffective because
> he failed to investigate alibi witnesses…. Defendant has never
> offered any other affidavits or certifications from proposed alibi
> or character witnesses. Ibid. Nor has he asserted any specific
> facts that would have been revealed based on personal
> knowledge of any proposed witness whether they be alibi,
> character, or fact witnesses. Ibid. . . .
>
> We note that "[a]dequate assistance of an attorney is measured
> according to whether the counsel has professional skills
> comparable to other practitioners in the field." State v. Davis,
> 116 N.J. 341, 351 (1989).  "The test is not whether defense
> counsel could have done better, but whether he [or she] met the
> constitutional threshold for effectiveness. Nash, supra, 212 N.J.
> at 543.
> . . .
>
> Simply stated, the record lacks any facts suggesting trial
> counsel's performance was deficient or that he was not

functioning in a manner guaranteed by the Sixth Amendment. See State v. Gaitan, 209 N.J. 339, 349-50 (2012) (citation and internal quotation marks omitted), cert. denied, __ U.S. __, 133 S. Ct. 1454, 185 L. Ed. 2d. 361 (2013). Furthermore, defendant has failed to offer any specific instances, acts, or omissions constituting ineffective assistance of counsel. See State v. Jack, 144 N.J. 240, 249 (1996) (citation and internal quotation marks omitted.) Therefore, he has not set forth a prima facie case of ineffective assistance of counsel. Preciose, supra, 129 N.J. at 462.
. . .

Finally, we reject defendant's argument that the court erred in denying his petition without an evidentiary hearing. "An evidentiary hearing . . . is required only where the defendant has shown a prima facie case and the facts on which he relies are not already of record." Pressler & Vernierno, Current N.J. Court Rules, comment 2 on R. 3:22-10 (2015). The mere raising of a claim for PCR does not entitle defendant to an evidentiary hearing. Cummings, supra, 321 N.J. Super. at 170. Because defendant failed to establish a prima facie case of ineffective assistance of counsel, no evidentiary hearing was required.

 (Ra25, Dkt. No. 13-28 at 3-10.)

    b.  *Analysis*

   The Appellate Division applied the Strickland standard to Petitioner's ineffective assistance of counsel claim. Therefore, habeas review is limited to whether the Appellate Division unreasonably applied the Strickland standard. This Court has reviewed the record that was before the Appellate Division on appeal of the denial of the first PCR petition.[3] Before trial, the trial court held a hearing on January 25, 2010. (Rta1, Dkt. No. 13-53.) The presiding judge, Honorable Louise Di Renzo Donaldson, J.S.C., asked defense counsel if he had a witness list, and counsel responded that there were no defense witnesses. (Id. at 4.) Petitioner was present. (Id. at 2.) In his counseled first PCR brief, Petitioner asserted that he

---

[3] See Rta 1, Ra15, Ra17, Ra18, Ra23, Ra24, Dkt. Nos. 13-53, 13-18, 13-20, 13-21, 13-26 and 13-27.

had suggested the names of several witnesses for his defense counsel to interview, and these

witnesses would have testified that he was not at the bar at the time of the shooting.

Importantly, Petitioner did not identify these witnesses by name nor did he elaborate on the

basis of his knowledge of their proposed testimony. (Ra17, Dkt. No. 13-20 at 7-8.)

Petitioner, in his pro se brief to the first PCR court, requested an evidentiary hearing where

he proposed to testify as to his trial counsel's errors, but he likewise provided no factual

basis or identification of alibi witnesses in support of his allegations.  (Id. at 16-17.)  On

PCR appeal, Petitioner argued that he had established a prima facie case of ineffective

assistance before the PCR court, stating "counsel failed to investigate supplied alibi

witnesses because there were no witnesses presented on behalf of defendant at trial." (Ra23,

Dkt. No. 13-26 at 29.) Petitioner elaborated, as follows.

> Defendant contends that he supplied witnesses that would have
> testified he was not at the scene of the crime when it occurred.
> These witnesses possessed the potential of creating doubt in the
> minds of the jurors. There was no downside to Defendant to
> present these witnesses and it cannot be reasoned that failure to
> investigate or produce these witnesses was a reasonable trial
> strategy.

(Id.  at 35.)

The Appellate Division reasonably determined that Petitioner was not entitled to an

evidentiary hearing to establish his ineffective assistance of counsel claim because he did not

offer any factual support for his alibi, such as the identity of the alibi witnesses and how they

could provide Petitioner with an alibi. This was fatal to his claim. See Lewis v. Horn, 581

F.3d 92, 107-8 (3d Cir. 2009) (habeas petitioner who did not present any affidavits from

potential alibi witnesses concerning their proposed testimony failed to establish ineffective

assistance of counsel claim.) Petitioner is not entitled to habeas relief on Ground One (a) of the amended habeas petition.

> D.    <u>Ground One (b)</u>

In Ground One (b) of the amended habeas petition, Petitioner asserts that his defense counsel was ineffective by failing to investigate and properly cross-examine the State's key witness, Rose Nelson, who testified that she saw Petitioner shoot the victim. (Am. Pet., Dkt. No. 4 at 5.)  Petitioner argues that he provided his trial counsel with information that Rose Nelson's testimony was provided under duress by the State, and counsel's failure to establish that Nelson's testimony was coerced prejudiced the defense.  (<u>Id.</u> at 6.) Petitioner requests an evidentiary hearing. (<u>Id.</u> at 16.)

Respondents oppose relief on Petitioner's claim, noting the Appellate Division found Petitioner had failed to offer any specific facts showing that Nelson was pressured or threatened into testifying. (Answer, Dkt. No. 13 at 53-54.)  In his reply brief, Petitioner claims he told his trial counsel that Nelson had contacted him and said she was being threatened by the prosecution and forced to testify against him and lie on the stand.  (Reply Brief, Dkt. No. 19 at 34-35.) Petitioner concludes that he sought an evidentiary hearing in the state courts; therefore, he is not barred from a federal evidentiary hearing under 28 U.S.C. § 2254(e)(2).

> 1.    *The highest reasoned state court decision*

As an initial matter, "[a] federal evidentiary hearing is permissible for a particular claim only if, among other requirements, the claim was not adjudicated on the merits by a state court. If it was, a state prisoner is limited to the record that was before that state court in seeking federal habeas relief." <u>Rapelje v. McClellan</u>, 571 U.S. 1036 (2013) (internal

quotations and citations omitted). Ground One (b) was adjudicated on the merits and

review of this claim is limited to the state court record.

The highest reasoned state court decision addressing this claim is that of the

Appellate Division on appeal of Petitioner's first PCR petition. The court decided the claim

on the merits as follows:

> Defendant has also failed to offer any specific facts pertaining
> to allegations that R.N. was "threatened" or "pressured" into
> testifying against defendant. Moreover, a review of the trial
> record reflects that trial counsel effectively cross-examined R.N.
> Counsel elicited testimony from R.N. that she was distracted at
> the time of the incident, that she may not have had a clear view
> of the shooting, and that her description of the assailant was
> flawed. Counsel also elicited testimony that R.N. had a close
> relationship with Sosa, suggesting her testimony against
> defendant may not be truthful. We note that "adequate
> assistance of an attorney is measured according to whether the
> counsel has professional skills comparable to other practitioners
> in the field." State v. Davis, 116 N.J. 341, 351 (1989). "The test
> is not whether defense counsel could have done better, but
> whether he [or she] met the constitutional threshold for
> effectiveness." Nash, supra, 212 N.J. at 543. Here, we find
> counsel's performance with respect to his cross-examination of
> R.N. was within the scope of effective assistance.

(Ra25, Dkt. No. 13-28 at 8-9.)

2.    *Analysis*

Upon review of Petitioner's first PCR briefs and exhibits,[4] the Appellate Division

reasonably found that Petitioner did not offer the PCR court any specific facts in support of

his allegation about Nelson testifying under duress. In his pro se PCR petition, which his

PCR counsel supplemented, Petitioner argued he advised his trial counsel that

> he had information that suggested that Ms. Nelson felt
> pressured by the State to offer testimony at trial. Not only did

---

[4] See, Ra15, Ra17, Ra18, Ra23, Ra24, Dkt. Nos. 13-18, 13-20, 13-21, 13-26 and 13-27.

> counsel not pursue this issue with Ms. Nelson in a pretrial
> investigation, a review of the trial transcript reveals that he did
> not even bother posing a single question of this issue. As the
> State's chief witness to the events, her credibility was
> paramount to the State's case. The defense has a clear line of
> questioning that could have gone to the heart of Ms. Nelson's
> testimony, but counsel either inexplicably chose not to pursue
> or had not even considered the information provided by Mr.
> Centeno in the first place.

(Ra17, Dkt. No. 13-20 at 8.) Petitioner's brief to the Appellate Division similarly lacked

details concerning how or why Nelson felt pressured or threatened by the State to testify.

(Ra23, Dkt. No. 13-26 at 33-37.) There is nothing in Nelson's trial testimony, on direct or

cross-examination, that would lend support to Petitioner's claim that she was under duress.

(Rta3, Dkt. No. 13-55 at 29-72.)

On Nelson's cross-examination, defense counsel had suggested that nothing unusual

was going on just before the shooting that would have drawn her attention to Petitioner, but

Nelson corrected him, stating she was staring pretty hard at Petitioner and Sosa because she

knew they did not get along. (Id. at 62.)  Defense counsel was also able to obtain Nelson's

admission that she did not report the animosity between Petitioner and Sosa to investigators

on the night of the shooting, implying that she made this up after the fact. (Id.)

Furthermore, the trial record supports the Appellate Division's conclusion that defense

counsel effectively cross-examined Ms. Nelson to attempt to discredit her testimony based

on her close relationship with the victim, her flawed description of the assailant and

distractions and obstructions that affected her ability to observe the shooting. (Rta3, Dkt.

No. 13-55 at 51-69, 72.)  Thus, even assuming defense counsel was aware of Petitioner's

conversation with Nelson, that she felt pressured or coerced to testify, counsel's choice to

instead cross-examine Ms. Nelson on her ability to identify the shooter was a reasonable

trial strategy because there is no indication she would have recanted her testimony if asked whether she felt coerced or under duress. "Even though trial counsel's strategy was ultimately unsuccessful, we must 'eliminate the distorting effects of hindsight,' and 'indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 107 (3d Cir. 2012) (quoting Strickland, 466 U.S. at 689.) The Court denies habeas relief on Ground One (b) of the amended habeas petition.

     E.    Ground Two

For his second ground for relief in the amended habeas petition, Petitioner asserts that his trial counsel was ineffective by failing to request full discovery and by failing to provide the discovery file to him for review, which precluded him from assisting in his own defense. (Am. Pet., Dkt. No. 4 at 7.) In support of this claim, Petitioner argues that he should not be required to establish prejudice. (Id.) Respondents counter that Petitioner's unsupported claim failed to show how counsel was deficient and resulted in prejudice. (Answer, Dkt. No. 13 at 55-56.) In his reply brief, Petitioner provides four reasons that his trial counsel was ineffective:

> (1) counsel was unable to provide Petitioner with a full disclosure of his discovery; (2) failed to request a bill of particular[s]; (3) Counsel failed to inform Petitioner of what evidence the prosecution had against him by way of any statements made against Petitioner, and (4) counsel was unable to allow Petitioner to view all of his discovery in relation to the star key witness for the prosecution.

(Reply Brief, Dkt. No. 19 at 36 (alteration added.)) Petitioner explains that during pretrial hearings he asked his trial counsel to provide him with all discovery, and counsel responded that he would request it from the prosecutor's office. (Id.) Trial counsel told Petitioner that

he obtained all discovery from the prosecutor, but Petitioner states that he personally did not receive statements made by the State's witnesses. (Id.) After trial, Petitioner again requested the entire discovery file for his appeal, and trial counsel said it would be provided to Petitioner's appellate counsel, but appellate counsel informed Petitioner that she would not be obtaining the discovery from trial counsel's offices. (Id.) In support of his habeas petition, Petitioner submitted letters that he wrote to counsel. (Id., citing Ex. Pa-7 and Pa-8, Dkt. Nos. 19 at 77-80.)  These letters were not part of the record before the Appellate Division on first PCR review.  (Ra23, Ra24,  Ra26, Dkt. Nos. 13-23, 13-24, 13-26.)

*1.   The highest reasoned state court decision*

As with the previous claims, this claim was decided on the merits in the state courts, and habeas review is limited to the state court record. The highest reasoned state court determination on this issue was the Appellate Division's opinion on first PCR review. The court held "defendant's assertion that trial counsel was ineffective for failing to . . .  provide discovery to defendant is unavailing." (Ra25, Dkt. No. 13-28 at 9.) "Defendant has not set forth with even the most basic detail what types of discovery were kept from him by counsel. Instead, defendant offers only self-serving and blanket assertions to support his argument." (Id.)

2.   *Analysis*

Petitioner, in his first PCR brief, alleged that his trial counsel failed to obtain complete discovery, but he did not describe anything that was missing from discovery. (Ra17, Dkt. No. 13-20 at 17.)  In his brief to the Appellate Division, Petitioner argued that he was not provided any discovery from his counsel and could not assist in his defense. (Ra25, Dkt. No. 13-26 at 39-40.) He asserted that it was unfair to require him to show

21

prejudice based on discovery that was not provided to him, and suggested that prejudice

should be presumed. (Ra23, Dkt. No. 13-26 at 39-42.)

Prejudice is presumed in certain Sixth Amendment cases

> where '[t]he accused is denied counsel at a critical stage of his
> trial,' United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct.
> 2039, 80 L.Ed.2d 657 (1984), or left "entirely without the
> assistance of counsel on appeal," Penson v. Ohio, 488 U.S. 75,
> 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). Similarly, prejudice
> is presumed "if counsel entirely fails to subject the prosecution's
> case to meaningful adversarial testing." Cronic, 466 U.S. at
> 659, 104 S.Ct. 2039.

Garza v. Idaho, 139 S. Ct. 738, 744 (2019). The presumption of prejudice "'is reserved for

cases in which counsel fails meaningfully to oppose the prosecution's case.'" United States

v. Gonzalez-Lopez, 548 U.S. 140, 147 (2006) (quoting Cronic, 466 U.S. at 659). In Bell v.

Cone, 535 U.S. 685 (2002), the Supreme Court stated that "[w]hen we spoke in *Cronic* of the

possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case,

we indicated that the attorney's failure must be complete. We said 'if counsel *entirely* fails to

subject the prosecution's case to meaningful adversarial testing.'" Steward v. Grace, 299 F.

App'x 203, 205–06 (3d Cir. 2008) (quoting Bell, 535 U.S. at 697) (quoting *Cronic,* 466 U.S.

at 659)).

Cronic does not govern Petitioner's case because defense counsel did not entirely fail

to subject the prosecution's case to meaningful adversarial testing. A review of the record

demonstrates that the Appellate Division reasonably determined defense counsel effectively

cross-examined Nelson. (Ra25, Dkt. No. 13-28 at 8.)  The Appellate Division also

recognized Judge Blue's "thorough and well-reasoned" opinion addressing each of

Petitioner's arguments. (Id. at 3-4.)  Based on review of the trial record, Judge Blue stated

"counsel vigorously represented defendant in this matter." (Rta 7, Dkt. No. 13-59 at 16.)

Petitioner has not cited any clearly established federal precedent that holds prejudice is presumed where defense counsel fails to provide the discovery file to the defendant to allow him to assist in his defense. Petitioner was required to establish the prejudice prong of Strickland to succeed on this ineffective assistance of counsel claim, and he did not attempt to do so. See, Weaver v. Massachusetts, 137 S. Ct. 1899, 1913-14 (2017) ("[w]hen a structural error is raised in the context of an ineffective-assistance claim . . . finality concerns are far more pronounced . . . and . . . petitioner must show prejudice in order to obtain a new trial); see, United States v. Senke, 986 F.3d 300, 314 (3d Cir. 2021), cert. denied, No. 21-5453, 2021 WL 4733511 (U.S. Oct. 12, 2021) (where claim concerning counsel's performance is not the type of structural error identified in Cronic, it is more appropriately viewed as ineffectiveness, which requires a showing of prejudice.) Therefore, Ground Two of the amended habeas petition is denied.

F.      Ground Three

In his third ground for relief, Petitioner argues that his trial counsel repeatedly made assurances to him that he would be allowed to testify in his own defense, but when the Court posed the question of Petitioner's decision whether or not to testify, counsel never discussed the issue with him but instead told the trial court he would not testify. (Am. Pet., Dkt. No. 4 at 9.)[5] In his amended habeas petition, Petitioner asserts that he was prejudiced

---

[5] In his second PCR petition in state court, Petitioner raised the following claim under Point II:

> Defense Counsel Was Ineffective. [standard of review omitted]
> Petitioner, therefore, contends that trial counsel was ineffective
> and this PCR should be granted for the reasons set forth below.
> In the alternative, there should be an evidentiary hearing in this
> matter to further explore and consider the issues raised herein.

because he was unable to testify that he was friends with the victim's sister, which would have weakened the State's theory of motive. (Am. Pet., Dkt. No. 4 at 9.)

Respondents maintain that Petitioner has failed to exhaust Ground Three because he did not exhaust the claim in his first PCR proceeding, and when he brought the claim in his second PCR proceeding, the state courts found the claim procedurally defaulted because it was untimely. (Answer, Dkt. No. 13 at 42-43.) In reply, Petitioner addressed the merits of his claim. He asserts that the state court misread the record when it concluded that he waived the right to testify. (Reply Brief, Dkt. No. 19 at 40.)  This Court notes that Petitioner is referring to the Appellate Division's Opinion on direct appeal, where Petitioner raised the

---

(Ra32, Dkt. No. 13-35 at 13-14.) In subsection A to Point II, Petitioner asserted

> Ineffective Assistance of PCR Counsel for failure to raise
> ineffective assistance of trial counsel for not explaining
> Defendant's right to testify at trial.  (Id. at 14.)

Petitioner explained that although the trial court said it was his choice whether or not to testify, trial counsel had discouraged him from doing so and then never discussed the issue with Petitioner, but instead informed the Court that Petitioner had decided not to testify. (Id. at 14-17.) Petitioner then stated:

> A petitioner has fairly presented his claim if he presented the
> same factual and legal basis for the claim to the state courts.
> Nara v. Frank,  488 F.3d 187, 197-98 (3d Cir. 2007). This
> Petitioner exhausted his ineffective assistance of trial court
> claim in his second PCR petition by alleging the same factual
> and legal basis presented in his habeas petition, although the
> claim was alleged in the state courts in the context of an
> ineffective assistance of PCR counsel.  The same is true for
> Ground Four, Petitioner raised the claim as ineffective
> assistance of PCR counsel in his second PCR petition, but also
> provided the legal and factual basis for his ineffective assistance
> of trial counsel claim that PCR counsel failed to raise.
> Therefore, Grounds Three and Four of the habeas petition are
> exhausted.

(Ra32, Dkt. No. 13-35 at 14.)

claim that the trial court erred by not directly asking Petitioner whether he wanted to testify. (Ra Dkt. No. 9, 13-12 at 16.)  Petitioner contends that the trial court never asked Petitioner if he waived the right to testify. Instead, defense counsel took it upon himself to waive Petitioner's right days after Petitioner's colloquy with the trial court. (Reply Brief, Dkt. No. 19 at 39-40.) Additionally, Petitioner asserts that he submitted an affidavit to the second PCR court explaining how he would have testified. (Id. at 41, citing Ex. Pa2, Dkt. No. 19 at 60-62.) In his affidavit to the second PCR court, Petitioner said he was playing video games at a friend's house at the time of the shooting. (Id.) He also gave a number of reasons to conclude that he had no animosity toward the victim.  (Id.)

1.  *The highest reasoned state court decision*

Ground Three was raised for the first time in Petitioner's second PCR petition.  On September 13, 2018, the Appellate Division affirmed the denial of petitioner's second PCR petition based on untimeliness under New Jersey Court Rule 3:22-12(a)(2), requiring a second or subsequent PCR petition to be filed within a year of the denial of the first PCR application. (Ra42, Dkt. No. 13-45.) The Appellate Division found petitioner's second PCR petition was filed considerably more than a year after his first PCR petition was denied, and without reason for the delay. (Id. at 4-5.) The Appellate Division affirmed the PCR court's determination that the second PCR petition was time barred and also found Petitioner's pro se claims were meritless, including his ineffective assistance claim regarding his right to testify. (Id. at 6.)

2.  *Analysis*

a.  *Procedural default*

If a state prisoner's constitutional claim has been barred in the state courts on an independent and adequate procedural ground, a procedural default occurs and a habeas court cannot review the claim absent a showing of cause and prejudice or actual innocence. Coleman, 501 U.S. at 729, 750.  Procedural default applies where the state court relied on a well-established and regularly followed procedural rule to bar the claim.  Johnson v. Lee, 578 U.S. 605, 606 (2016).

There are two time limitations in New Jersey Rule 3:22-12, the five-year limit for a first PCR petition and the one-year limit for a second or subsequent PCR petition. Although there are exceptions to the five-year time limit for filing a first PCR petition, the Third Circuit has held that the five-year time limit for first PCR petitions in New Jersey Rule 3:22-12 is well-established and regularly followed for the purpose of procedural default of a habeas claim. Johnson v. Pinchak, 392 F.3d 551, 561 (3d Cir. 2004). New Jersey's one-year time limit on second PCR petitions is even more strictly followed, as described by the New Jersey Appellate Division:

> [E]ffective September 1, 2009, the Supreme Court amended Rule 3:22–12 by adding a new subparagraph, Rule 3:22–12(c) (2009), now Rule 3:22–12(b), which provides: "These time limitations shall not be relaxed, except as provided herein." Like the simultaneous amendment to Rule 1:3–4(c), the amendment resulting in Rule 3:22–12(b) was intended "to make clear that the general time limits to file a petition for post-conviction relief as set forth in R. 3:22–12 cannot be enlarged or relaxed except as specifically set forth in R. 3:22–12(a)." Report of the Supreme Court Criminal Practice Committee 2007–2009 Term at 4–5 (Feb. 17, 2009).
>
> Finally, effective February 1, 2010, the Supreme Court again amended Rule 3:22–12 by adding a new subparagraph, Rule 3:22–12(a)(2), requiring that "no second or subsequent petition shall be filed more than one year after" the date one of three claims accrued, as defined in that subparagraph. The Court also added Rule 3:22–4(b), requiring second or successive petitions

to be dismissed unless they alleged one of those three claims and were "timely under R. 3:22–12(a)(2)."

By mandating in Rule 3:22–12(a)(2) that the one-year time limit applied "[n]otwithstanding any other provision of this rule," the Supreme Court made clear that the late filing of a second or subsequent PCR petition could not be excused in the same manner as the late filing of a first PCR petition. Under the amended Rule 3:22–12(a)(1)(A), the filing of a "First Petition For Post–Conviction Relief" more than five years after the date of the judgment of conviction can be excused if the defendant shows both "that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice." That exception to the five-year time limit has no application to second or subsequent petitions filed within one year of the events specified in Rule 3:22–12(a)(2), as that subparagraph is itself an exception to the five-year requirement of Rule 3:22–12(a)(1)(A).

State v. Jackson, 185 A.3d 262, 267–68 (N.J. Super. Ct. App. Div. 2018) (footnotes omitted).

The Appellate Division, on second PCR review, found that Petitioner's first PCR petition was decided on October 3, 2013, and his second PCR petition was filed on August 2016, almost three years after the first petition was denied, and was barred as untimely by Rule 3:22-12.  (Ra42, Dkt. No. 13-45 at 5.) In April 2017, when the second PCR petition was dismissed as time-barred, the one-year time limit on second PCR petitions was well-established and regularly followed. Therefore, this habeas claim and all of the remaining grounds for relief that were raised in Petitioner's second PCR petition are  procedurally defaulted.

b.   *Overcoming procedural default*

In his reply brief in support of Ground Three of the amended habeas petition, Petitioner offers two reasons to overcome procedural default. (Reply Brief, Dkt. No. 19 at

51-53.)  Petitioner contends that he properly exhausted Ground Three, therefore, it is not defaulted. In support of proper exhaustion of the claim, he asserts "that an application for post-conviction relief can be 'properly filed' even if the state courts dismiss it as procedurally barred." (Id. at 53.)

Petitioner misconstrues procedural default. A procedurally defaulted claim is technically exhausted but has been dismissed by the state courts based on an independent and adequate state law ground. Coleman, 501 U.S. at 732. "[T]he question whether an application [for post-conviction relief] has been "properly filed" [for purposes of the statute of limitations in 28 U.S.C. § 2244(d)(2)] is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar." Artuz v. Bennett, 531 U.S. 4, 9 (2000). Petitioner's argument relies on the legal framework for determining whether a PCR petition was properly-filed for purposes of tolling the habeas statute of limitations, a framework that is inapplicable to overcoming procedural default. Thus, the Court turns to Petitioner's argument that his PCR counsel's ineffective assistance was the cause of his procedural default, and that procedural default should be excused because his ineffective assistance of trial counsel claims have substantial merit.

Petitioner relies on Martinez v. Ryan, 566 U.S. 1 (2012). The Supreme Court in Martinez held that,

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To

28

> overcome the default, a prisoner must also demonstrate that the
> underlying ineffective-assistance-of-trial-counsel claim is a
> substantial one, which is to say that the prisoner must
> demonstrate that the claim has some merit. Cf.  *Miller–El v.*
> *Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)
> (describing standards for certificates of appealability to issue).

Martinez, 566 U.S. at 14 (emphasis added). The Court further noted "[i]t is likely that most

of the attorneys appointed by the courts are qualified to perform, and do perform, according

to prevailing professional norms; and, where that is so, the States may enforce a procedural

default in federal habeas proceedings." Id. at 15.

The Third Circuit Court of Appeals set forth the following framework to determine if

a habeas petitioner satisfied the cause and prejudice standard under Martinez.

> "[W]here state law requires a prisoner to raise claims of
> ineffective assistance of trial counsel in a collateral proceeding,
> rather than on direct review, a procedural default of those
> claims will not bar their review by a federal habeas court if
> three conditions are met: (a) the default was caused by
> ineffective assistance of post-conviction counsel or the absence
> of counsel (b) in the initial-review collateral proceeding (i.e., the
> first collateral proceeding in which the claim could be heard)
> and (c) the underlying claim of trial counsel ineffectiveness is
> 'substantial[.]'" *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014)
> (quoting *Martinez*, 566 U.S. at 14, 132 S.Ct. 1309).

Preston v. Superintendent Graterford SCI, 902 F.3d 365, 376 (3d Cir. 2018). The cause and

prejudice standard described in Martinez applies under New Jersey state law because

ineffective assistance of counsel claims are typically required to be brought in post-

conviction review. See, State v. Nunez-Valdez, 200 N.J. 129, 138, 975 A.2d 418, 423–24

(2009), as corrected (July 30, 2009) (quoting State v. Preciose, 609 A.2d 1280 (N.J. 1992)

("Under New Jersey law, ineffective-assistance-of-counsel claims "are particularly suited for

post-conviction review because they often cannot reasonably be raised in a prior

proceeding.")) To establish the first <u>Martinez</u> requirement, a habeas petitioner "must demonstrate that [PCR counsel's alleged error] constituted deficient performance under the first prong of the *Strickland* analysis—meaning that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 376 (quoting <u>Strickland</u>, 466 U.S. at 688.)

Courts should apply the <u>Strickland</u> standard "with scrupulous care, because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial." <u>Richter</u>, 562 U.S. at 105.  Here, the trial transcript shows that after the State rested, the court held a "charging conference" to discuss the jury charges prior to Petitioner's decision on whether or not to testify: "The Court:  As we said before, depending on whether or not Mr. Centeno testifies, we'll amend the jury charge if we have to, ok? I'm charging them as if Mr. Centeno is not going to testify." (Rta4, Dkt. No. 13-56 at 68.) At the end of the conference, the trial court discussed Petitioner's right to testify with him:

> The Court:  I have to explain to you your right to testify to you, sir. You have the right to —now that the State has rested— you have the right, you have to make a choice after consultation with your attorney.  You have three options.
>
> First option is to exercise your absolute constitutional right to remain silent and not take the stand. At that point, you can ask the Court to refrain, that is, not to comment to the jury in any way concerning your decision not to testify. So here's that first choice. You can decide I don't want to testify. Don't tell the jury anything. Don't say anything to the jury at the end about my not testifying, okay? You understand the choice, sir?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  The second option is to exercise your right to remain silent and to have me instruct the jury that they can not hold it against you in any way. If you choose this option, I am going to tell the jury the following. As you know, Mr. Centeno elected not to testify at trial…. So that's your second option.

> Don't testify and you get me to read that to the jury at the end of the trial.
>
> Your third option is to give up the right to remain silent and testify. You will then be subject to cross-examination. If you are subject to cross-examination by the State, the State can and most likely will bring out any prior convictions that you have. If they do that, if you testify and they bring out your prior convictions, I will explain to the jury that if they believe it is appropriate to do so they may consider your prior convictions as bearing on your credibility along with all the other factors on credibility. I will also instruct the jury that they may not consider your prior convictions as evidence as a predisposition to commit crimes. So, did you understand the last choice?
>
> The Defendant:  Yes, ma'am.

(Id. at 74-76.) The Court then repeated the three options and further stated:

> So that choice is yours. You need to talk to your attorney. You have to make that decision. I already told your attorney that because I sent the jury home you really don't need to make that decision this moment. You can think about it and you can let me know on Tuesday morning before we start what you want to do, okay?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  Do you have any questions about what I just explained to you, sir?
>
> The Defendant:  No, ma'am.

(Id. at 76.)  When the trial resumed, the Court inquired "Mr. Tinari, has your client made a decision as to whether or not he's going to testify?" (Rta5, Dkt. No. 13-57 at 3.) Mr. Tinari replied, "He has, your Honor, and it's his decision not to testify." (Id.)  In Petitioner's presence, the defense rested and defense counsel then proceeded with his closing argument. (Id. at 3-4.)

The trial court gave explicit instruction to Petitioner and defense counsel that it was Petitioner's choice to make whether to testify. "Where the trial court has no reason to

believe that the defendant's own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right." United States v. Pennycooke, 65 F.3d 9, 13 (3d Cir. 1995).  There is nothing in the record indicating that the trial court had reason to believe that defense counsel had frustrated Petitioner's desire to testify.

Moreover, there is a presumption that where a defendant is represented by counsel, counsel has presumably discussed the defendant's right to testify with him, and defendant voluntarily and intelligently waived that right. Gilreath v. Bartkowski, No. CIV.A. 11-5228 MAS, 2014 WL 4897053, at *16 (D.N.J. Sept. 30, 2014) (citing Glenn v. Wynder, 2012 WL 4107827, * 40 (W.D.Pa. Sep. 19, 2012) (citing Pennycooke, 65 F.3d at 12–13.)  The petitioner must overcome the presumption.  Petitioner relies solely on his own word, unsupported by anything in the record, that counsel falsely represented to the trial court that Petitioner made the choice not to testify. This claim is belied by the fact that when Petitioner filed his pro se briefs in his first PCR proceeding, where he requested an evidentiary hearing on a series of allegations of ineffective assistance of counsel, Petitioner did not include an allegation that trial counsel failed to give him the choice to testify. (Ra15, Dkt. No. 13-12 at 8; Ra17, Dkt. No. 13-20 at 17.)

Even if the Court accepts Petitioner's allegation as true, Petitioner has not shown Strickland prejudice. Petitioner submitted an affidavit with his reply brief, stating he would have testified that he was at a friend's house playing video games when the victim was shot at Monte's bar. (Reply Brief, Dkt. No. 19 at 60-62.) It would have been Petitioner's uncorroborated testimony, where he had an obvious motive to fabricate an alibi on murder charges, against the corroborated testimony of Rose Nelson, whom the jury found

sufficiently credible to find Petitioner guilty beyond a reasonable doubt.  It is significant that, at the time of trial, Petitioner did not have an alibi witness to corroborate his proposed testimony.  Although Petitioner blames his trial counsel for failing to present alibi witnesses, and blames his first PCR counsel for not obtaining affidavits from alibi witnesses, Petitioner did not take the opportunity, in his pro se briefs to the PCR court, to identify the names of his alibi witnesses and explain why he could not obtain their affidavits or appearance at trial. As to Petitioner's proposed testimony concerning his lack of motive for the murder, his testimony would have opened him up to impeachment on cross examination concerning the victim's indictment for attempted murder of Petitioner's brother, which could have proven very detrimental to Petitioner.  As discussed above, the PCR court's decision not to hold an evidentiary hearing on defense counsel's failure to present alibi witnesses was not objectively unreasonable, and Petitioner's own alibi testimony would have been uncorroborated and his motive testimony potentially harmful. Therefore, Petitioner has failed to establish prejudice from PCR counsel's failure to raise the ineffective assistance of trial counsel claim, based on trial counsel's alleged failure to permit Petitioner to make the choice whether or not to testify, and fails to establish cause and prejudice to excuse procedural default of Ground Three of the amended habeas petition. The Court will deny habeas relief on this claim.

  G. <u>Grounds Four and Six</u>

  In his fourth and sixth grounds for relief, Petitioner contends his trial counsel was ineffective by failing to request a curative instruction in response to the prosecutor's prejudicial comments in closing argument (Ground Four), and that the trial court erred by failing to give a sufficient curative instruction. (Ground Six.) (Am. Pet., Dkt. No. 4 at 10,

12.) As discussed below, the prosecutor praised defense counsel and suggested that despite his skills at cross-examination, he was unable to damage the testimony of the State's primary witness, Rose Nelson. Petitioner asserts that only a minimal curative instruction was given. Defense counsel, therefore, was ineffective by failing to request a mistrial or a more specific instruction, and the trial court erred by failing to give a more specific instruction. Petitioner points to the jury's request to hear Nelson's testimony again as evidence of prejudice.

Respondents interpreted the fourth ground for relief as a challenge to the Appellate Division's denial of Petitioner's underlying claim of prosecutorial misconduct. (Answer, Dkt. No. 13 at 60-64.)  Petitioner raised the same claim in his second PCR petition under the guise of ineffective assistance of trial counsel for failing to request a mistrial or stronger curative instruction. (Am. Pet., Dkt. No. 4. at 10.)

It is helpful to review the trial court record underlying Grounds Four and Six. In closing argument, the prosecutor first discussed Rose Nelson's testimony, and how it was corroborated by other witness testimony and physical evidence. (Rta5, Dkt. No. 13-57 at 19-22.)  Then, the prosecutor stated:

> Rose's testimony was compelling. On direct, she answered my questions, but that's not surprising because my questions are the easy ones. She knows what's coming there. Cross examination of a witness is always much more telling than direct examination of a witness. And you've had the opportunity to see Mr. Tinari for several days now. He's well-spoken, intelligent. He probes the witnesses. He's the highest caliber trial attorney. But did he shake the testimony of Rose Nelson? Even a little bit? No. In fact, if anything happened on cross-examination Rose actually further explained herself and her ability to see this defendant….

(Id. at 22.) After the prosecutor's closing argument, the Court, outside the presence of the

jury, heard defense counsel's objection.

> Mr. Tinari:  If I may, I want to voice an objection. Especially like the compliment that counsel made concerning my abilities and all. However, that's not proper argument to the jury. I would ask the court to give a cautionary instruction that counsel has an absolute right to cross-examine. Has nothing to do with how brilliant you are or how great you are. Because all it does is enhances and solidifies the testimony of Rose Nelson, which, of course, is vouching for her in an indirect way. That's why I'm objecting to that, your Honor. I like the compliment, but certainly [it] is not proper.
>
> The Court:  Ms. Shah?
>
> Ms. Shah:  Judge, I disagree with counsel. The jury had the opportunity to observe cross-examination, which was quite vigorous, and, as the State was free to argue to the jury, handled quite well by the witness. I think it was fair comment.
>
> Mr. Tinari:  There is a portion of the charge, I know that, your Honor.
>
> The Court:  I'm looking for the portion of the charge.
>
> Mr. Tinari:  Function of the jury, your Honor, perhaps?
>
> The Court:  I'm going to put in here —tell you where I'm going to put it. I'm going to put it into the beginning part of it that the lawyers have the right, and, indeed, the duty to cross-examine … all the witnesses.
>
> Mr. Tinari:  Thank you, your Honor.
>
> Ms. Shah:  I don't object to that, Judge.

(Rta5, Dkt. No. 13-57 at 28.) Thus, after the State's closing argument, the jury was charged,

in relevant part:

> As jurors it is your duty to weigh the evidence calmly and without passion, prejudice, sympathy. Any influence caused by these emotions has the potential to deprive both the State and

the defendant what you promised them, a fair and impartial trial by fair and impartial jurors.

Also, speculation, conjecture and other forms of guessing play no role in the performance of your duty. The lawyers have a right, and indeed, they have a duty to cross-examine witnesses.

(Id. at 30.) Further, the Court stated:

I'm going to talk a little bit now about your function. In my preliminary charge when we started the case I explained to you that you are the judges of the facts and as the judges of the fact you are to determine the credibility of the various witnesses as well as the weight to be attached to their testimony.

You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached to the testimony of each witness. Regardless of what counsel said or I may have said recalling the evidence in this case, it is your recollection of the evidence that should guide you as judges of the facts. Arguments, statements, remarks, openings and summations of counsel are not evidence and must not be treated as evidence. Although the attorneys may point out what they think is important in the case, you must rely solely upon your understanding and recollection of the evidence that was admitted during trial.

Whether or not the defendant has been proven guilty beyond a reasonable doubt is for you to determine based on all the evidence presented during the trial. Any comments by counsel are not controlling.

(Rta5, Dkt. No. 13-57 at 31.)

1. *Highest reasoned state court decision*

On September 13, 2018, the Appellate Division affirmed the denial of Petitioner's second PCR petition, finding the claims were procedurally barred because the second PCR petition was filed considerably more than one year after the deadline. (Ra42, Dkt. No. 13-45

at 4-5.) The court further found this claim was barred under Rule 3:22-5[6] because it could have been adjudicated on direct appeal. (Id. at 5.)

        2.    *Procedural default*

For the same reasons discussed in Ground Three above, Grounds Four and Six  are procedurally defaulted because they were raised in an untimely second PCR petition. Thus, Petitioner must establish cause and prejudice or actual innocence to overcome the procedural default. In his reply brief, relying on Martinez, Petitioner asserts that the ineffectiveness of his PCR counsel in arguing the ineffective assistance of trial counsel claim in Ground Four overcomes the procedural default. (Reply Brief, Dkt. No. 19 at 44.) Petitioner raised the following claim in his pro se brief on direct appeal:

> The failure of the trial court to include in the jury charge a sufficient curative instruction regarding the prosecutor['s] comments during summation about the defense counsel being well-spoken, intelligent, and a highest caliber trial attorney to bolster its witness's testimony was a due process violation of 14th Amendment of U.S. Constitution.

(Ra7, Dkt. No. 13-10 at 2.) The Appellate Division denied this claim, stating:

> Defendant in his pro se brief objects to the prosecutor's comments in which she complimented defense counsel. He suggests that the statement was prosecutorial misconduct because it attempted to bolster the credibility of the State's witnesses by pointing out that despite its effectiveness, the cross-examination did not weaken the testimony.

---

[6] N.J. Ct. Rule 3:22-5 provides that

> [a] prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings.

A reversal based on prosecutorial misconduct requires the prosecutor to have made statements which substantially prejudice a defendant's right to a fair trial. State v. Frost, 158 N.J. 75, 88 (1999). In fact, prosecutors are allowed substantial leeway so "long as their comments are reasonably related to the scope of the evidence presented." Id. at 82.

During his summation, defense counsel attacked Nelson's credibility as being neither reasonable nor reliable. He referred to his cross-examination of her and said that "[h]er mind was made up" as to the identity of the shooter.

Within reason, prosecutors are allowed to comment upon the credibility of a witness's testimony. See State v. Smith, 167 N.J. 158, 180-81 (2001) (noting that aspersions on witness credibility are problematic when not supported by the record.) The factors we consider in determining whether relief is warranted are: (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them. Frost, supra, 158 N.J. at 83. Defense counsel made a timely objection to the comments and requested the court caution the jury, which request was denied.

But given that the prosecutor's comments were merely a fair response to defense counsel's comments, were not derogatory or demeaning to defense counsel, defendant, or any defense theory, the argument has no merit. The State was also entitled to point out that despite substantial pressure, Nelson's testimony did not waiver.

(Ra9, Dkt. No. 13-12 at 14-16.)

With this background in mind, PCR counsel was not constitutionally ineffective, as required to show a Sixth Amendment violation under the Strickland standard, by failing to rehash this prosecutorial misconduct claim under the guise of ineffective assistance of counsel trial counsel and PCR counsel. The claim was implausible on PCR review because the Appellate Division had determined on direct appeal that there was no prosecutorial misconduct. And even if PCR counsel was deficient in not raising the claim, Petitioner was

not prejudiced because the trial court in fact provided a stronger curative instruction by telling the jury that it was the sole judge of credibility and the weight to be accorded to witness testimony. The Court also instructed that a lawyer's comments are not evidence and should not be treated as evidence. Therefore, Petitioner has not established cause and prejudice to overcome procedural default of Ground Four. Ground Six of the amended habeas petition was raised as a trial court error for failure to give a curative instruction, and therefore is not subject to the cause and prejudice exception in <u>Martinez</u>. Moreover, the claim is meritless because the prosecutor's comments were permissible, and the trial court in fact gave an appropriate instruction on the jury's role. For these reasons, Grounds Four and Six of the amended habeas petition are denied.

> H.   <u>Ground Five</u>

In Ground Five of the amended habeas petition, Petitioner alleged he was denied his constitutional right to confront a witness when the trial court ruled he could not cross-examine Jeffrey Perez on his requirement to register as a sex offender because the registration requirement arose out of a juvenile adjudication. (Am. Pet., Dkt. No. 4 at 11-12.) Petitioner exhausted this claim on direct appeal. (<u>Id.</u> at 12.)

Respondents submit that Ground Five is not cognizable on habeas review because it is a challenge to admissibility of evidence. (Answer, Dkt. No. 13 at 57.) In reply, Petitioner argues that he raised Ground Five as a Sixth Amendment Confrontation Clause claim. (Reply Brief, Dkt. No. 19 at 46.) He maintains that the trial court unduly restricted his right to confrontation by denying him the right to question a witness on a possible motive for testifying favorably to the State. (<u>Id.</u>)

> 1.   *The highest reasoned state court decision*

Petitioner raised this claim under the Sixth Amendment Confrontation Clause in his counseled brief on direct appeal. (Ra6, Dkt. No. 13-9 at 27-30.) The Appellation Division, on direct appeal, addressed only the legal basis for the evidentiary ruling.

> Defendant claims the court erred by refusing to allow trial counsel to cross-examine a State's witness about his status as a Megan's Law Offender. The Megan's law requirements were imposed on the witness as a result of a prior juvenile adjudication. Defendant theorizes that the jury was thereby deprived of the opportunity to consider if the witness may have had an interest in currying favor with the State and therefore was biased.

> Decisions regarding the introduction of evidence are reviewed pursuant to an abuse of discretion standard. State v. Kemp, 195 N.J. 136, 149 (2008). This abuse of discretion standard also applies to a judge's decision with regard to cross-examination. State v. Jenewicz, 193 N.J. 440, 467 (2008). We see no error in the judge's decision to exclude the line of questioning.

> Nothing but pure speculation connects any alleged bias with a possible prosecution for failure to register under Megan's law. The record does not contain any actual circumstance which would have caused the witness to curry favor with the State in order to avoid a future prosecution. That this witness is subject to registration requirements is not relevant information which would have aided the jurors in deciding credibility. Defendant's true aim was to give negative character evidence which would have prejudiced their assessment of his testimony.

> This conclusion is supported by the fact that the defendant did cross-examine the witness extensively about his prior adult conviction for drug possession and distribution, as well as his state of intoxication that evening. Defense counsel fully developed inconsistencies between the witness's initial statement and his testimony at trial, the number of people he saw in the bar, and obstructions blocking his view of the victim's location from where he stood at the dance floor. This point therefore also lacks merit.

(Ra9, Dkt. No. 13-12 at 11-12.) Although some of the factors considered in the evidentiary ruling and the Confrontation Clause claims overlap, this Court will review Ground Five de

novo because the Appellate Division did not address the clearly established federal law

governing Petitioner's Confrontation Clause claim. See Fahy v. Horn, 516 F.3d 169, 190

(3d Cir. 2008) ("Because the PCRA court never reached the merits of this claim, our review

is de novo.")


        2.     *Analysis*

          a.     <u>*Elements of Confrontation Clause Claim*</u>

The Supreme Court has recognized "that the exposure of a witness' motivation in

testifying is a proper and important function of the constitutionally protected right of cross-

examination. <u>Davis v. Alaska</u>, 415 U.S. 308, 316–17 (1974)  (citing <u>Greene v. McElroy</u>, 360

U.S. 474, 496 (1959)).

In a subsequent case discussing <u>Davis</u>, the Supreme Court explained that

> Davis was charged with stealing a safe from a bar. The police
> found the stolen safe abandoned near the home of Richard
> Green, who testified at trial that he had seen Davis engaged in
> suspicious activity near this site on the day of the crime.
> Defense counsel was barred from eliciting on cross-examination
> that Green was on juvenile probation for burglary both at the
> time of his pretrial identification of Davis and at the time of
> trial. The defense sought to suggest that Green may have
> slanted his account in the State's favor either to shift suspicion
> away from himself or to avoid revocation of probation for
> failing to "cooperate." [*Davis*,]' 415 U.S., at 310–311, 94 S.Ct.,
> at 1107. This Court reversed Davis' conviction, emphasizing
> that Green's testimony was "crucial" and that there was a "real
> possibility" that pursuit of the excluded line of impeachment
> evidence would have done "[s]erious damage to the strength of
> the State's case." *Id.*, at 319, 94 S.Ct., at 1112.
>
> . . .
>
> [i]t does not follow, of course, that the Confrontation Clause of
> the Sixth Amendment prevents a trial judge from imposing any
> limits on defense counsel's inquiry into the potential bias of a

> prosecution witness. On the contrary, trial judges retain wide
> latitude insofar as the Confrontation Clause is concerned to
> impose reasonable limits on such cross-examination based on
> concerns about, among other things, harassment, prejudice,
> confusion of the issues, the witness' safety, or interrogation that
> is repetitive or only marginally relevant. And as we observed
> earlier this Term, "the Confrontation Clause guarantees an
> opportunity for effective cross-examination, not cross-
> examination that is effective in whatever way, and to whatever
> extent, the defense might wish." Delaware v. Fensterer, 474
> U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per
> curiam ) (emphasis in original).

Delaware v. Van Arsdall, 475 U.S. 673, 678–84 (1986). Further, the Court held that the

harmless-error doctrine applies to a Confrontation Clause violation. Id. at 684.

   Following Davis and its progeny, the Third Circuit Court of Appeals, in United

States v. Chandler, developed the following two part-test for Confrontation Clause claims

based on limitations to cross-examination.

> First, we determine whether the limitation "significantly
> inhibited [the defendant's] effective exercise of her right to
> inquire into [the] witness's 'motivation in testifying.'" [United
> States v. Chandler, 326 F.3d at 219] (quoting Van Arsdall, 475
> U.S. at 678–79, 106 S.Ct. 1431). Then, if it did, we ask whether
> the limitation fell within "those 'reasonable limits' which a trial
> court, in due exercise of its discretion, has authority to
> establish." Id. Whether the trial court abused its discretion, we
> explained, "depends on whether the jury had sufficient other
> information before it, without the excluded evidence, to make a
> discriminating appraisal of the possible biases and motivation
> of the witness[ ]," id. (citation omitted), or, conversely, whether
> without the limitation, "a reasonable jury could have 'reached a
> significantly different impression' of [the witness's] credibility,"
> id. at 222 (quoting Van Arsdall, 475 U.S. at 680, 106 S.Ct. 1431).

United States v. Noel, 905 F.3d 258, 268 (3d Cir. 2018). If a Confrontation Clause violation

is found, the harmless-error doctrine applies. Chandler, 326 F.3d at 224.

           b.      *Perez's testimony*

The State's witness at issue was Jeffrey Perez, who testified as follows.  (Rta3, Dkt. No. 13-55 at 111-125.) Perez was a long-time friend of the victim, Jose Sosa, and was with him at Monte's bar on the night Sosa was killed. Perez and Sosa were regulars at Monte's and knew the bartender, Rose Nelson. Perez and Sosa started the evening at Monte's and then left to attend Perez's employer's Christmas party, where they had some more drinks until the party ended at 10:30 or 11:00 p.m. They returned to Monte's 15 or 20 minutes later, and there were more people present, around twenty. They sat at their usual spot at the corner of the bar. Perez saw "Face," Petitioner's nickname, approach the bartender, Rose. When Perez stood up to ask Rose for a drink, Petitioner acknowledged Perez and they said "what's up." Perez had known Petitioner for about eight years, and he identified him in the courtroom. Their relationship was just to acknowledge each other upon meeting. After seeing Petitioner at Monte's, Perez went outside to smoke, and he saw Petitioner walking out of the bar as he walked back in. They said "be safe" to each other. Perez remembered Petitioner was wearing a black hoodie.

Perez left Sosa at the bar to go talk to a girl and dance with her. When the song was over, they started to walk back to the bar. They were talking when Perez heard a pop. When Perez looked away to see what the sound was, the girl walked away. Perez walked toward the front door and discovered Sosa kneeling on one knee and bleeding. Perez applied pressure to the bleeding while Rose gave Sosa CPR. Perez was taken into police custody because he "got physical" when they would not let him go in the ambulance with Sosa. He was questioned at the police station and again at the prosecutor's office.

c.      *Effectiveness of Petitioner's cross-examination of Perez*

Under <u>Chandler</u>, the first step is to determine whether the limitation on cross-examination significantly inhibited Petitioner's effective exercise of his right to inquire into Perez's motivation in testifying. Petitioner was precluded from inquiring into Perez's Megan's Law registration status arising out of his juvenile adjudication. Petitioner, however, effectively cross-examined Perez on the following: (1) he remained friendly with the victim's family; (2) he had been interviewed by police officers and then investigators for the prosecution on the night of the shooting; (3) he was under the influence of alcohol on the night of the shooting; (4) at the time of the shooting, his attention was on a girl he was flirting with; (5) his view was blocked when he heard the shot; (6) he did not tell the investigators, on the night of the shooting, that Petitioner was wearing a black hoodie; (7) he saw Petitioner walk out of Monte's while Sosa was still alive; (8) about one year before trial, Perez learned that Petitioner had been accused of killing Sosa, but he did not tell prosecutors he had seen Petitioner that night, and he never told anyone until he was summoned to testify at trial; (9) Perez was familiar with the criminal justice system because he had been convicted and sentenced for drug possession and delivery. (Rta3, Dkt. No. 13-55 at 114-125.)

Petitioner was able to cross-examine Perez on his motive for testifying by pointing out that Perez himself had been questioned on the night of the shooting, implying that he may have been a suspect and had motive to deflect the attention to someone else, and that Perez had a prior conviction and sentence, suggesting that he knew the prosecution could offer incentives for testimony. Petitioner also attacked Perez's motive based on his friendship with the victim and attacked his credibility on his failure to come forward with details of the crime sooner. For these reasons, "the jury had sufficient other information

before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivation'" behind Perez's testimony. <u>Chandler</u>, 326 F.3d at 219 (quoting <u>Brown v. Powell</u>, 975 F.2d 1, 4 (3d Cir. 1992) (quoting <u>United States v. Tracey</u>, 675 F.2d 433, 437 (1st Cir. 1982)). It is important to note that "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." <u>Van Arsdall</u>, 475 U.S. at 679 (quoting <u>Fensterer</u>, 474 U.S. at 20) (emphasis deleted). Therefore, Petitioner fails to meet the first element of his Confrontation Clause claim. The Court will, nonetheless, address the second element, whether the evidentiary ruling fell within the court's discretion to impose "reasonable limits" on a defendant's right of cross-examination. <u>Chandler</u>, 326 F.3d at 223.

   d. <u>*Whether the trial court abused its discretion*</u>

   The Appellate Division stated "([t]hat this witness [Perez] is subject to registration requirements is not relevant information which would have aided the jurors in deciding credibility. Defendant's true aim was to give negative character evidence which would have prejudiced their assessment of his testimony." (Ra9, Dkt. No. 13-12 at 11-12.) At trial, defense counsel explained how he would use the testimony, if it was admitted: "He's an adult and he's still registering. That's for safeguarding of the public and public to know about it. That's the only reason I would want to go into that area." (Rta3, Dkt. No. 13-55 at 114.) This supports the Appellate Division's conclusion that the evidence was offered as bad character evidence, that Perez was a danger to the public.

   In New Jersey, when prejudice outweighs the relevance of the proffered testimony, a trial court may exclude it. N.J.R.E. 403. A "trial court retains the discretion to limit the

scope of cross-examination" including "discretion to impose limits based on concerns about … prejudice, confusion" or interrogation that is "only marginally relevant." Savage v. Dist. Att'y of Cty. of Philadelphia, 116 F. App'x 332, 337 (3d Cir. 2004) (quoting Van Arsdall, 475 U.S. at 679). See, Savage, 116 F. App'x at 338 ("[w]hether the trial court's determination is framed in terms of relevancy or the inadmissibility of propensity evidence, it is clear that the trial court was acting well within its discretion in excluding such evidence.") The trial court did not abuse its discretion in precluding cross-examination on whether Perez was required to register under Megan's law based on a juvenile adjudication from fifteen years prior to Petitioner's trial. The basis for the juvenile adjudication and registration requirements, according to the trial transcript, a lower level sex offense, is not the type of crime that calls into question a person's honesty that would be useful in determining credibility. Furthermore, defense counsel had no reason to believe Perez had not met registration requirements, and there was no reason to believe he was subject to prosecution on that basis. The testimony was only marginally relevant and the prejudicial effect on Perez's testimony, and the burden on the State's interest in keeping juvenile adjudications confidential, outweighed its admission. Therefore, Petitioner failed to establish the second element of a Confrontation Clause violation.

e.   *Harmless-error review*

Even if this Court were to find that the trial court abused its discretion in its limitation on cross-examination, the harmless-error doctrine would prevent relief on Ground Five. The harmless-error doctrine established by the Supreme Court in Brecht v. Abramson, 507 U.S. 619, 622 (1993) governs habeas review under § 2254 whether or not the

state court applied the more lenient <u>Chapman</u>[7] harmless-error standard. <u>Fry v. Pliler</u>, 551

U.S. 112, 120 (2007). Here, the state court did not address the Confrontation Clause claim,

and this Court will apply the <u>Brecht</u> harmless-error doctrine de novo. To obtain habeas relief

on a constitutional error, a habeas petitioner must establish actual prejudice, that the error

"had substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>,

507 U.S. at 637 (1993) (quoting <u>Kotteakos v. U.S.</u>, 328 U.S. 750, 776 (1946)).  The Third

Circuit has stated

> *Van Arsdall* instructs that the following factors bear upon
> harmlessness: "the importance of the witness' testimony in the
> prosecution's case, whether the testimony was cumulative, the
> presence or absence of evidence corroborating or contradicting
> the testimony of the witness on material points, the extent of
> cross-examination otherwise permitted, and, of course, the
> overall strength of the prosecution's case." 475 U.S. at 684, 106
> S.Ct. 1431.

<u>Frazier v. Sec'y Pennsylvania Dep't of Corr.</u>, 799 F. App'x 124, 127 (3d Cir. 2020).

The limitation on cross-examination concerning Perez's Megan's Law registration

requirements did not have a substantial and injurious effect in determining the jury's verdict.

Most notably, Perez's testimony was not crucial to the prosecution because he did not see

Petitioner shoot Sosa. Further, Perez's testimony was not crucial because he was not the

only witness to corroborate Nelson's testimony that Petitioner was at Monte's that evening,

and that Petitioner was wearing a black hoodie. <u>See</u>, <u>Ali v. Adm'r New Jersey State Prison</u>,

675 F. App'x 162, 165–66 (3d Cir. 2017)  ("[the witness's] in-court identification of [the

defendant] was not uniquely important to the State's case, as it was cumulative of other

---

[7] In <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967), a case arising on direct appeal, the
Supreme Court "held that the standard for determining whether a conviction must be set
aside because of federal constitutional error is whether the error "was harmless beyond a
reasonable doubt." <u>Brecht</u>, 507 U.S. at 622.

evidence presented at trial and was corroborated by that evidence.") Miguel Mota testified that he saw a man wearing a dark hoodie with his arm extended and holding a gun, but he did not see the shooter's face. (Rta3, Dkt No. 13-55 at 94-95.) Felicia Santiago testified that she knew Petitioner and saw him at Monte's that night. (Rta4, Dkt. No. 13-56 at 9-13)  She saw him make eye contact with Sosa. (Id. at 11.) About ten minutes later, she saw Petitioner exit Monte's. (Id. at 12.)  She heard the gunshot after hearing the beeping noise the door makes when someone enters the bar. (Id. at 13.) She did not see the shooter. (Id.)

Diana Ocasio testified that she knew Petitioner and saw him at Monte's on the night of the shooting. (Rta3, Dkt. No. 13-55 at 75.) Petitioner complimented Ocasio and they took a picture together using his cell phone, which he kept. (Id. at 76.) She did not see him again that evening. (Id. at 86.) The jury saw the photograph, and it showed Petitioner wearing a black hoodie, although the hood was not on his head. (Rta4, Dkt. No. 13-56 at 23- 26; Rta5, Dkt. 13-57 at 21.)

In addition to Perez's testimony being cumulative to the testimony of other witnesses, the defense exposed the potential unreliability of Perez's testimony, specifically that Perez had not come forward earlier with testimony that he saw Petitioner at Monte's wearing a black hoodie, and that Perez, who had been drinking, had been taken into custody and interviewed by the police and prosecution investigators on the night of the shooting. Through this cross-examination, the defense was able to suggest to the jury that Petitioner may have been motivated to testify for the prosecution because he had a prior conviction and perhaps thought he could garner some benefit for his testimony or deflect any attention from himself. For all of these reasons, the Court denies Ground Five of the amended habeas petition upon de novo review of the Confrontation Clause claim.

III.    CERTFICATE OF APPEALABILITY

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

IV.    CONCLUSION

Petitioner has not established his burden on habeas review to show the state courts' denial of his claims was contrary to or involved an unreasonable application of clearly established federal law, nor did Petitioner overcome the presumption of correctness of a state court factual finding and establish that a state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Petitioner failed to establish cause and prejudice to excuse his procedurally defaulted claims. Finally, Petitioner's Confrontation Clause claim fails on de novo review. Therefore, the Court denies the amended habeas petition.

An appropriate Order follows.

Date:  March 23, 2022

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**UNITED STATES DISTRICT JUDGE**